**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CLYDE W. MUNZEL, as Trustee of the CLYDE W. MUNZEL REVOCABLE TRUST, under agreement dated May 3, 2005,

Plaintiff,

v. Case No: 8:21-cv-2185-WFJ-AAS

HILLSBOROUGH COUNTY, a political subdivision of the State of Florida; CARMINE PISANO, an individual; and JOHN DOE, an individual,

Defendants.

___________________________________/

**ORDER**

This matter comes before the Court on two motions to dismiss a six-count complaint, Dkt. 1, brought by Plaintiff Clyde W. Munzel. Defendant Hillsborough County ("the County") moves to dismiss Counts I, II, and V brought against it. Dkt. 17. Defendant Code Enforcement Officer Carmine Pisano moves to dismiss Count III brought against him. Dkt. 18. Plaintiff filed a response to the motions. Dkt. 21. After careful consideration of the filings, the Court grants both motions. For reasons stated below, the Court also dismisses Count IV and declines to exercise supplemental jurisdiction over Count VI.

**BACKGROUND**

Plaintiff owns real property in Hillsborough County, Florida, upon which a vacant gas station and convenience store sit. Dkt. 1 at 2–3. Plaintiff states that, at the time of the underlying events, he was in the final stages of lease negotiations with a potential tenant who planned to open and operate the gas station and convenience store, prompting Plaintiff to make substantial improvements to the property. *Id.* at 3. These improvements included new gas dispensers, underground gas tanks, and related hardware and software. *Id.*

In the early morning hours of September 11, 2017, Hurricane Irma hit the Tampa Bay area as a Category 1 hurricane. *Id.* at 4. Hurricane Irma caused many downed powerlines and trees, resulting in the County receiving over $4.9 million from the Federal Emergency Management Agency ("FEMA") to assist with debris removal. *Id.* at 5. Among the properties impacted by Hurricane Irma was that of Plaintiff. *Id.* The hurricane knocked over the steel canopy structure that served as a roof over Plaintiff's gas pumps. *Id.*

Plaintiff states that the fallen canopy was only touching the ground at one corner and leaning away from the street. *Id.* Plaintiff also emphasizes that, though the canopy fell on top of one gas pump, all of the underground gas tanks were empty because the gas station was not in operation. *Id.* at 5–6. Photographs taken of the canopy show that the structure had collapsed in close proximity to the public

sidewalk and street.[1] Dkt. 18-1 at 15, 20. One of these photographs, Dkt. 18-1 at 15, is attached as an Appendix to this order. The photographs show that the canopy's support column nearest the street had fallen, leaving jagged metal exposed at ground-level and facing the sidewalk. *Id.* at 2, 15. Nothing is shown to be physically separating the collapsed canopy from the public sidewalk. *Id.* at 15. Plaintiff states that, though he was "not overly concerned" by the fallen canopy, he promptly began speaking to contractors about fixing it. Dkt. 1 at 5−6.

On September 14, 2017, three days after Plaintiff's canopy structure fell, the Code Enforcement Manager of Hillsborough County Code Enforcement ("Code Enforcement") sent an email titled "Emergency Abatement Request" to the Code Enforcement Executive Director, Rapid Response Division Director, and Defendant Code Enforcement Officer Pisano. *Id.* at 5−6. Officer Pisano forwarded the email to Code Enforcement Area Supervisor James Karr, writing that he approved the emergency abatement of the collapsed canopy and expressing his intent to refer the emergency abatement to Code Enforcement's Rapid Response

---

[1] Defendant Officer Pisano attached photographs of the collapsed canopy, Dkt. 18-1, to his motion to dismiss. "[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The photographs are central to Plaintiff's claims, as they depict the collapsed canopy on September 14, 2017, just before it was demolished by the County. They are also undisputed, as Plaintiff does not challenge the photographs' authenticity. *See* Dkt. 21 at 12−13. Therefore, without converting the motion to one for summary judgment, the Court will consider the photographs attached to Officer Pisano's motion to dismiss.

division. *Id.* at 7.

According to Plaintiff, Supervisor David Cansler was the area supervisor assigned to the region encompassing Plaintiff's property. *Id.* at 8. Plaintiff contends that Supervisor Cansler visited the property to assess the fallen canopy and "determined [it] did not present a public nuisance or imminent health threat" under the Hillsborough County Code of Ordinances ("the Code"). *Id.* However, Plaintiff states that Supervisor Karr, who oversaw a different area of the county, nevertheless arrived at the property to carry out the immediate abatement of the fallen canopy. *Id.* He alleges that Supervisor Karr told Plaintiff's representatives that the Rapid Response team was on its way to remove the canopy, but that Plaintiff's crew could handle the removal of the canopy if Plaintiff's crew arrived before the Rapid Response team. *Id.* at 8–9. Plaintiff contends that his crew arrived before the Rapid Response team yet was still prohibited from removing the canopy themselves. *Id.* at 9.

Plaintiff states that the Rapid Response team began demolishing the fallen canopy despite having "no experience in demolition." *Id.* Plaintiff asserts that, in attempting to pick up the canopy with machinery, the Rapid Response team dropped the canopy on Plaintiff's gas pumps and convenience store roof. *Id.* According to Plaintiff, the County's demolition resulted in "a heaping pile of twisted scrap metal," inoperable gas pumps, and a damaged convenience store

roof. *Id.* at 10.

The County, however, contends that Plaintiff's collapsed canopy was a public nuisance that posed a risk of injury to the public. Dkt. 17 at 4. Likewise, Officer Pisano asserts that the canopy was in a "precarious position" and could have hurt someone had it not been quickly addressed. Dkt. 18 at 5. The County and Officer Pisano state that Code Enforcement's emergency action of removing the collapsed canopy was both necessary and reasonable to prevent harm to the public. Dkt. 17 at 5; Dkt. 18 at 5.

As a result of the above events, Plaintiff brings this six-count lawsuit against the County, Officer Pisano, and "John Doe," whom Plaintiff claims is "the boss of Supervisor Cansler, to the extent that individual is someone other than Officer Pisano." Dkt. 1 at 1, 16. In Count I, Plaintiff brings a 42 U.S.C. § 1983 claim against the County for violating the Takings Clause of the Fifth Amendment. *Id.* at 10. Count II alleges a second § 1983 claim against the County for violating Plaintiff's procedural due process rights. *Id.* at 11. Similarly, Count III is a § 1983 claim against Officer Pisano for violating Plaintiff's procedural due process rights. *Id.* at 13. Count IV asserts the same claim brought in Count III, but against John Doe. *Id.* at 15. In Count V, Plaintiff brings an inverse condemnation claim against the County under the Florida Constitution. *Id.* at 18. Finally, Count VI asserts a negligence claim against the County. *Id.* at 19.

The County now moves to dismiss Counts I, II, and V for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 17. Citing qualified immunity, Officer Pisano moves to dismiss Count III. Dkt. 18.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Id.* In considering a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The Court should limit its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## ANALYSIS

### The County's Motion to Dismiss

The County moves to dismiss Counts I, II, and V for failure to state claims. Dkt. 17. The Court addresses each of these counts in turn.

#### a. Count I Takings Claim

The County argues that the Count I takings claim brought by Plaintiff under § 1983 should be dismissed for two reasons. First, the County contends that

Plaintiff has failed to identify a custom or policy of the County that would trigger municipal liability under § 1983. Dkt. 17 at 3−4. Second, the County states that Plaintiff has failed to plead a taking, as the collapsed canopy amounted to a public nuisance that was removed for public safety. *Id.* at 4. Plaintiff responds that a claimant is not required to identify a custom or policy when bringing a takings claim against a municipality. Dkt. 21 at 4. Plaintiff also asserts that his fallen canopy was not a nuisance and that he sufficiently pled a regulatory taking. *Id.* at 6−8.

Pursuant to the Takings Clause of the Fifth Amendment, no "private property shall be taken for public use, without just compensation." U.S. Const. amend. V. Takings may be categorical or regulatory. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322−23 (2002). While categorical takings occur when the government physically takes possession of a person's property for a public purpose, a regulatory taking occurs when the government prohibits certain uses of a person's land. *Id.* Regulatory takings include when the government (1) authorizes a permanent physical invasion of a person's land or (2) causes the loss of all economically beneficial use of a person's land. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). Here, Plaintiff asserts that he suffered a regulatory taking because he experienced both a permanent physical invasion of his property and a loss of all economically beneficial use of the same.

Dkt. 21 at 6–7.

However, as the Supreme Court has recognized, "the Takings Clause does not require compensation when an owner is barred from putting land to a use that is proscribed by those existing rules or understandings" of nuisance and property principles stemming from an independent source, such as state law. *Lucas*, 505 U.S. at 1031 (internal quotations omitted). A municipality's "exercise of the police force by the destruction of property which is itself a public nuisance . . . is very different from taking property for public use[.]" *Empire State Ins. Co. v. Chafetz*, 278 F.2d 41, 42 (5th Cir. 1960)[2] (quoting *Pasternack v. Bennett*, 190 So. 56 (Fla. 1939)). Accordingly, no compensation is due when the government's seizure of property was necessary to abate a nuisance or protect the public health. *Wilson v. Sarasota Cnty.*, No. 8:10-cv-489-T-27EAJ, 2011 WL 5117566, at *2 (M.D. Fla. Oct. 25, 2011) (citing *Lucas*, 505 U.S. at 1029).

Plaintiff's complaint states that Code Enforcement determined his collapsed canopy to be a nuisance that posed a risk to public safety. Dkt. 1 at 7. By demolishing the canopy, which fell onto a gas pump and near the public sidewalk with jagged metal facing passersby, the County abated what it deemed a nuisance. This it is authorized to do pursuant to its police powers. *See Thompson v. State*, 92

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

So. 2d 1317, 1318 (Fla. 1981). As such, the County's demolition of Plaintiff's collapsed canopy was an abatement of a nuisance and did not require compensation under the Takings Clause.

Further, even accepting as true Plaintiff's allegations that his canopy was not a nuisance, Plaintiff has failed to plead a taking. Plaintiff does not plead that the County's actions amounted to a categorical taking, as nowhere in his complaint does he allege that the County took the canopy for public use. Though Plaintiff insists that he has pled a regulatory taking by showing a permanent physical invasion or loss of all economically beneficial use, he has not.

A permanent physical invasion is generally understood as the government placing something in or on a landowner's private property without the landowner's consent. *See Tahoe-Sierra*, 535 U.S. at 322. Plaintiff does not allege that the County has permanently placed anything on his property. The loss of all beneficial economic use is typically seen in situations where the government requires land to be left in its natural state. *Lucas*, 505 U.S. at 1018. Plaintiff does not allege that the County is forbidding him from operating a gas station or engaging in any other lawful economic endeavor on his property. Therefore, Plaintiff has failed to plead a regulatory taking.

For these reasons, Count I is dismissed for failure to state a claim.

**b. Count II Procedural Due Process Claim**

The County next argues that the Count II procedural due process claim should be dismissed for Plaintiff's failure to identify a custom or policy that would trigger municipal liability under § 1983. Dkt. 17 at 3–4. As a local government entity, the County is considered a "person" in the context of § 1983 claims. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Despite this status, a county cannot be held liable in a § 1983 action for its employee's actions under a *respondeat superior* theory. *McDowell*, 392 F.3d at 1289. A plaintiff must instead show (1) a violation of his or her constitutional rights, (2) a custom or policy of the municipality that constituted deliberate indifference of that constitutional right, and (3) that the custom or policy caused the violation. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Establishing a policy or custom requires a plaintiff to point to a "persistent and wide-spread practice." *Moody v. City of Delray Beach*, 609 F. App'x 966, 967 (11th Cir. 2015) (quoting *McDowell*, 392 F.3d at 1290). Demanding a showing of a custom or policy "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *McDowell*, 392 F.3d at 1290 (quoting *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397,

403 (1997)). In other words, this requirement prevents municipalities from being held liable under § 1983 for isolated incidents or random acts. *McDowell*, 392 F.3d at 1290; *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

In *Oden, LLC v. City of Rome*, 707 F. App'x 584 (11th Cir. 2017), the Eleventh Circuit discussed the necessity of pleading a custom or policy to establish municipality liability. There, the plaintiff company brought a similar § 1983 claim against a city for allegedly violating its procedural due process rights by demolishing its vacant building without ensuring it received prior notice. *Id.* at 585. Though the city mailed the plaintiff notices of its plans to demolish the building, the mailings were returned as undeliverable. *Id.* at 585−86.

The Eleventh Circuit affirmed the district court's dismissal of the *Oden* plaintiff's § 1983 claim against the city, noting that the plaintiff did not allege that the city's failure to provide notice was the result of a policy or custom. *Id.* at 587 (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016)). The Eleventh Circuit explained that the relevant act for purposes of municipality liability in this case was not the city's demolition of the building, but the city's mailing of notices to a defunct address. *Id.* Because the plaintiff did not allege that this act was the result of a policy or custom as opposed to a "single error," the Eleventh Circuit determined that this claim was properly dismissed. *Id.* (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329 (11th Cir. 2015)).

The Eleventh Circuit's analysis in *Oden* is instructive here. Like the complaint in *Oden*, Plaintiff's complaint fails to sufficiently identify any policy or custom of the County that caused the alleged violation of his procedural due process rights. The only instance in which Plaintiff explicitly mentions a policy in his complaint is when he states that the County demolished the canopy pursuant to Hillsborough County Ordinance 12-7, which is the County's property preservation ordinance. Dkt. 1 at 7. However, like in *Oden*, the County's demolition of the canopy is not the relevant act in this Count II analysis—the relevant act is the County's failure to give prior notice to Plaintiff.

While Plaintiff goes on to state that the alleged procedural due process violation stemmed from "a custom or policy of the County of granting its employees power to conduct immediate abatement actions without prior notice and an opportunity to be heard," *Id.* at 12−13, there is no further explanation of *how* this is a custom or policy. Plaintiff does not allege that Ordinance 12-7, or any other County policy, is *per se* unconstitutional. Rather, he states that the County "did not follow the procedures for abatement . . . under the Code." *Id.* at 12. However, Plaintiff points to no other instances in which the County did not follow the procedures set forth in the Code for immediate abatements without notice. It is not enough to allege a "single error." *Oden*, 707 F. App'x at 588; *see also Weiland*, 792 F.3d at 1329. Given that Plaintiff has failed to identify a practice or custom of

the County that caused this alleged constitutional violation, his § 1983 claim brought against the County in Counts II cannot stand.

**c. Count V Inverse Condemnation Claim**

The County also seeks to dismiss the Count V inverse condemnation claim brought by Plaintiff under the Florida Constitution. Under Article X, Section 6(a) of the Florida Constitution, "[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner[.]" To plead a sufficient takings claim under the Florida Constitution, a plaintiff must allege that the government either (1) required him to submit to a temporary or permanent physical occupation of his land or (2) enacted a regulation or imposed a condition that deprived him of all economically beneficial use of his land. *Fla. Fish & Wildlife Conservation Comm'n v. Daws*, 256 So. 3d 907, 914 (Fla. 1st DCA 2018). However, the Florida Supreme Court has stated that cities need not compensate landowners "if they can identify 'background principles of nuisance and property law'" that forbid the manner in which the landowner was using the property. *Keshbro, Inc. v. City of Miami*, 801 So. 2d 864, 875 (Fla. 2001) (quoting *Lucas*, 505 U.S. at 1030).

Even when Plaintiff's allegations are accepted as true—including that his collapsed canopy was not a nuisance—Plaintiff fails to plead an inverse condemnation claim. As explained in the analysis of Count I, Plaintiff does not

sufficiently allege that the County took the canopy for public use, caused a physical occupation of his land, or left him without any economically beneficial use of his property. Plaintiff's Count V inverse condemnation claim is dismissed.

**Officer Pisano's Motion to Dismiss**

Turning to the second motion to dismiss before the Court, Dkt. 18, Officer Pisano contends that the Count III procedural due process claim brought against him under § 1983 should be dismissed on the basis of qualified immunity. Dkt. 18 at 3. Officer Pisano states that the collapsed canopy on Plaintiff's property constituted an emergency situation, demanding Officer Pisano to take immediate action. *Id.* at 3−4. Plaintiff, however, asserts that Officer Pisano has not established his entitlement to qualified immunity, as he did not have the discretion to authorize an immediate abatement without prior notice. Dkt. 21 at 14. Plaintiff also argues that no reasonable official would have determined the fallen canopy to be an emergency situation warranting removal without prior notice. *Id.* at 15.

Qualified immunity protects government officials from being held liable in their individual capacities for discretionary actions taken in the course of their official duties. *Alcocer v. Mills*, 906 F.3d 944, 950−51 (11th Cir. 2018). Given the purpose of the qualified immunity doctrine is to ensure that insubstantial claims against officials are resolved before discovery, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible

stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231−32 (2009) (internal quotations omitted). A district court may therefore consider a qualified immunity defense on a motion to dismiss. *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001).

An official entitled to qualified immunity must show that he or she was (1) performing a legitimate job-related function, (2) through means that were within his or her power to utilize. *Spencer v. Benison*, 5 F.4th 1222, 1230−31 (11th Cir. 2021) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1265, 1266 (11th Cir. 2004)). In assessing these two prongs, a district court should look to the general nature of the official's action while temporarily disregarding whether it may have been committed for an unconstitutional purpose or in an unconstitutional manner. *Spencer*, 5 F.4th at 1231; *Carruth v. Bentley*, 942 F.3d 1047, 1055 (11th Cir. 2019).

Upon establishing the above two prongs, the burden shifts to the plaintiff to show that the official's action violated a constitutionally protected right that was clearly established at the time of the official's action. *Spencer*, 5 F.4th at 1231. For a right to be clearly established, "previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999).

Here, the County's Code provides that a code enforcement officer's duty is to enforce codes and ordinances. HILLSBOROUGH COUNTY, FLA., CODE OF ORDINANCES ch. 14, art. III, § 14-64. Additionally, the Code allows for the emergency abatement of a nuisance without prior notice if that nuisance is deemed an imminent health threat by the Code Enforcement Department Director, who is defined as the "director . . . or his or her authorized designees." *Id.* at §§ 8-172, 8-180. Pursuant to the Code, abating an imminent health threat is a legitimate prerogative of a code enforcement officer's job. Considering the general nature of Officer Pisano's approval of the emergency abatement of the collapsed canopy, the Court finds that Officer Pisano was performing a legitimate job-related function through means he was empowered to use. Whether Officer Pisano carried out this immediate abatement of the collapsed canopy in an unconstitutional manner does not change the fact that he was performing a legitimate job-related function that fell under his discretionary authority. *See Holloman*, 370. F.3d at 1267.

With Officer Pisano meeting the first two prongs of the qualified immunity analysis, the burden shifts to Plaintiff to show that Officer Pisano violated a clearly established constitutional right of which a reasonable person would have known based on the state of the law at the time of the official's conduct. *Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002). This reasonableness standard gives the government official the benefit of the doubt unless his or her conduct was "so obviously

illegal" that only an official who was incompetent or in knowing violation of the law would have committed the action. *Sanders*, 177 F.3d at 1249.

Plaintiff alleges that Officer Pisano violated his procedural due process rights by failing to provide him with notice and an opportunity to be heard before removing the collapsed canopy. Dkt. 1 at 14. However, Plaintiff has not shown that, based on the state of the law in 2017, property deemed to be an imminent health threat requiring immediate abatement was the sort of property interest protected by procedural due process rights. He has not provided, nor has the Court found, any binding case law in his favor on this point. Without such a clearly established right, Officer Pisano's conduct cannot be described as "so obviously illegal" under the reasonable person standard so as to strip him of his qualified immunity. Count III is dismissed.

**Remaining Claims**

After dismissing Counts I, II, III, and V, the Court turns to the two remaining claims. Count IV alleges a § 1983 procedural due process claim against "John Doe," while Count VI alleges a negligence claim against the County under Florida law.

**a. Count IV Procedural Due Process Claim**

Plaintiff brings the same procedural due process claim against John Doe in Count IV as he does against Officer Pisano in Count III. Plaintiff has not identified

John Doe but describes this defendant as "the boss of Supervisor Cansler, to the extent that individual is someone other than Officer Pisano." Dkt. 1 at 1, 16. In his complaint, Plaintiff simply states that, prior to the demolition of the collapsed canopy, his representatives were told by Supervisor Karr that "Supervisor Cansler's 'boss' approved the Immediate Abatement." *Id.* at 9. Nowhere else in the complaint does Plaintiff set forth facts pertaining to John Doe individually. Rather, Count IV consists only of conclusory statements positing that John Doe failed to follow adequate procedures and thereby denied Plaintiff of procedural due process. *Id.* at 16−18. Without more, this claim against John Doe cannot proceed. The Court dismisses Count IV *sua sponte* for failure to state a claim.

**b. Count VI Negligence Claim**

With the other five counts dismissed, only Plaintiff's Count VI negligence claim against the County remains. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all other claims over which it has original jurisdiction. Such is the case here, as only a non-diverse state-law claim remains. *See Mills v. Sodexo, Inc.*, No. 8:12-cv-1319-T-33AEP, 2013 WL 3992415, at *2 (M.D. Fla. Aug. 2, 2013). The Court declines to exercise its supplemental jurisdiction over Count VI.

**CONCLUSION**

For the foregoing reasons, the Court grants the motions to dismiss of

Hillsborough County, Dkt. 17, and Officer Carmine Pisano, Dkt. 18. Accordingly, Counts I, II, III, and V are dismissed without prejudice. The Court also dismisses without prejudice Count IV against "John Doe" for failure to state a claim. The Court declines to exercise its supplemental jurisdiction authority over the remaining state-law negligence claim brought in Count VI. If Plaintiff wishes to file an amended complaint, he may do so within twenty-one (21) days.

**DONE AND ORDERED** at Tampa, Florida, on November 23, 2021.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record