# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CLYDE W. MUNZEL, as Trustee of the
CLYDE W. MUNZEL REVOCABLE
TRUST, under agreement dated May 3, 2005,

     Plaintiff,

v.                                                      CASE NO. 8:21-cv-2185-WFJ-AAS

HILLSBOROUGH COUNTY and
CARMINE PISANO,

     Defendants.
_____/

## ORDER

Before the Court is Defendant Hillsborough County's motion to dismiss Counts I, II, III, and V and to strike Count VI of the amended complaint (Dkt. 26), Defendant Officer Carmine Pisano's motion to dismiss with prejudice Count IV of the amended complaint (Dkt. 27), and Plaintiff's memorandum in opposition (Dkt. 31).  After careful consideration of the allegations of the amended complaint (Dkt. 23), the submissions of the parties, and the applicable law, the Court concludes that the amended complaint as to the County should be dismissed with leave to amend consistent with this order.  Count VI should not be stricken.  The sole count against Officer Pisano should be dismissed with prejudice on the basis of qualified immunity.

## PERTINENT ALLEGATIONS

Accepting all factual, not conclusory, allegations of the amended complaint as true and construing them in the light most favorable to the plaintiff, *see Pielage v. McConnell*, 516 F.3d

1282, 1284 (11th Cir. 2008), the following events occurred in connection with Hurricane Irma in September 2017.

### *The Property*

Plaintiff owns a vacant gas station and convenience store in Ruskin, Florida.  Dkt. 23 ¶¶ 9–10.  Plaintiff alleges it "sits near the busy intersection of U.S. 41 and 4th Ave. SW in southern Hillsborough County."  Dkt. 23 ¶ 10.  The steel canopy stood twenty feet high and "was rectangular in shape, measuring approximately sixty feet long by forty feet wide."  Dkt. 23 ¶ 14.  Two steel columns anchored the canopy, bolted five feet underground in concrete footings.  *Id*.

Plaintiff had made substantial improvements on the property and was finalizing lease negotiations with a potential tenant in September 2017.  Dkt. 23 ¶ 11–13, 15.  On September 11, 2017, Hurricane Irma caused the steel canopy over the gas pumps to topple and rest on one of its four corners.  Dkt. 23 ¶¶ 14, 20–21.  The storm left the canopy "on Plaintiff's property with no part touching the sidewalk or street."  Dkt. 23 ¶24.  The following photographs are a part of the record.  Dkt. 18-1; Dkt. 22 at 3 n.1 & Appendix 1.



*__Emergency Abatement__*

The County began the process of seeking an emergency abatement on September 14, 2017.  Dkt. 23 ¶ 39–40.  The immediate abatement process applies to an "imminent health threat" as defined in the Hillsborough County Code of Ordinances, which codifies Ordinance 12-7 at section 8-180.  Dkt. 23 ¶¶ 29–30, 41.  Plaintiff acknowledges that "[i]n a case involving a public nuisance which is also determined by the Code Enforcement Department Director to be an imminent health threat, the Code Enforcement Department may immediately, and without prior notice to the property owner, terminate and abate the condition.  Code Sec. 8-180(a)."  Dkt. 23 ¶ 33.  Should an immediate abatement action occur, the "Code Enforcement Director shall serve a notice of abatement and costs on the property owner.  Code Sec. 8-180(b)."  Dkt. 23 ¶ 34.  The notice should set a hearing in front of the Code Enforcement Department or a special master to challenge the Department's determination that an imminent health threat exists.  Dkt. 23 ¶ 34 (citing Code Sec. 8-180(d)).  Plaintiff alleges "the County never served a notice of abatement and costs on Plaintiff advising him of his right to request a hearing to challenge the Code Enforcement Department's determination of the existence of an imminent health threat."  Dkt. 23 ¶ 69.

Plaintiff pleads that the fallen canopy was not a public nuisance—an imminent health threat warranting immediate, emergency abatement without notice.  Plaintiff alleges that a pattern or practice of pursuing immediate abatement actions without prior notice is "evidenced by the fact that, in the County's 2019 fiscal year, it conducted 81 emergency abatement actions

4

against properties that the County asserts had conditions constituting imminent health threats."
Dkt. 23 ¶ 37.

### *Code Enforcement Personnel*

Plaintiff alleges the County Enforcement Code requires that either the director of the Code Enforcement Department or authorized designee determine whether the circumstances represent an imminent risk of injury.  Dkt. 23 ¶¶ 30–31 (citing Code Sec. 8-172).  Plaintiff further alleges that Code Enforcement Officer Carmine Pisano was neither the director nor an authorized designee.  Dkt. 23 ¶¶ 42–43.  Nevertheless, Officer Pisano authorized an immediate abatement (demolition and removal of canopy) on Plaintiff's property without prior notice. Dkt. 23 ¶¶ 40–41, 44–45, 52.  In the alternative, Plaintiff alleges that if Officer Pisano was the director or authorized designee, the officer's actions represented either the execution of a codified policy or custom of the County or established a policy or custom of the County to declare imminent injury without an opportunity for Plaintiff to seek administrative review.  Dkt. 23 ¶¶ 46–47.

Despite Officer Pisano's decision, Plaintiff alleges that Area Code Enforcement Supervisor David Cansler had visited the property earlier and determined that the canopy did not present a public nuisance or imminent health threat.  Dkt. 23 ¶¶ 48–51.  Nevertheless, Area Code Enforcement Supervisor James Karr approved the emergency abatement on September 14 and arrived at the property to implement the emergency abatement.  Dkt. 23 ¶¶ 40, 53, 57. According to Plaintiff, Supervisor Karr informed Plaintiff that Officer Pisano's "boss" had approved the immediate abatement.  Dkt. 23 ¶ 55.

## *Demolition*

That same day, September 14, the County's Rapid Response Team demolished the canopy and left behind the debris—"a heaping pile of twisted steel scrap," which Plaintiff alleges was caused by "negligent demolition work."  Dkt. 23 ¶¶ 57–60.  On September 19, 2017, the County advised Plaintiff of a hearing on an emergency abatement to be held the next day.  Dkt. 23 ¶¶ 63–64.  The hearing was held September 20, 2017, which Plaintiff and his counsel attended.  Dkt. 23 ¶ 67.  The special master found the debris "created and left" by the County constituted a public nuisance and ordered Plaintiff to remove it within 48 hours.  Dkt. 23 ¶ 67.  Plaintiff complied.  Dkt. 23 ¶ 68.  Based on these facts, Plaintiff alleges the County never afforded him "any opportunity to be heard on the Code Enforcement Department's determination that an imminent health threat existed on the property on September 14, 2017."  Dkt. 23 ¶ 71.

## *Claims for Relief*

The amended complaint alleges three counts against the County based on federal law: (1) in Count I, a categorical (as opposed to regulatory) taking violative of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments for which Plaintiff demands just compensation for damages to the steel canopy, gas pumps, and convenience store; (2) in Count II, a *per se* violation of procedural due process based on the ordinance's failure to adequately provide pre-deprivation process; and (3) in Count III, an "as applied" violation of procedural due process based on a constitutionally inadequate process for pre- and post-deprivation as to Plaintiff's property.  Two counts seek damages against the County under state law—inverse condemnation (Count V) and

negligence (Count VI).  The remaining count (Count IV) seeks damages from Officer Pisano for a violation of federal procedural due process under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments based on the absence of pre-deprivation notice and the clearly established law that no reasonable person would judge that the tipped canopy was an imminent risk of causing injury.

## DISCUSSION

The relevant allegations will be addressed as to each count below.  The overarching issue, as urged by Plaintiff, is whether Plaintiff has alleged a plausible claim for failure to give pre-deprivation notice to remove a fallen steel canopy on his vacant gas station and convenience store.  Stated differently, are there sufficient facts pled to support the allegation that "no reasonable person" would find the tipped canopy an imminent risk of causing injury?  Plaintiff also contends that at the post-deprivation hearing, only the heap of steel created by the County was determined to be a nuisance—whether the toppled canopy was a nuisance in its state on September 14 was never addressed at the hearing.  Plaintiff also cites to the number of emergency abatements conducted by the County in the fiscal year 2019 to support a policy or practice claim.

### _Counts I and V (Takings and Inverse Condemnation against County)_

As acknowledged by the County, the Plaintiff's focus or theory of the case now is different in the amended complaint—he now asserts that a categorical, not a regulatory, taking occurred.  Dkt. 26 at 4.  He alleged a regulatory taking in the original complaint.

A categorical taking or "physical taking" requires a "direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005); *Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 805 (11th Cir. 2009). The Supreme Court cases "have stressed the 'longstanding distinction' between government acquisition of property and regulations." *Horne v. Dep't of Agriculture*, 576 U.S. 350, 361 (2015) (citing *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 323 (2002)).

By abandoning a regulatory takings claim, Plaintiff is no longer required to establish he suffered the loss of all economically valuable uses of his property. *Tahoe-Sierra*, 535 U.S. at 322 ("When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner regardless of the whether the interest that is taken constitutes an entire parcel or merely a part thereof.") (citation omitted). *Lucas v. South Carolina Coastal Council*, 112 S. Ct. 2886, 2894 (1992), which this Court discussed in its prior order dismissing the initial complaint, involved a regulatory taking, and it is "inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa." *Horne*, 576 U.S. at 361 (quoting *Tahoe-Sierra*, 535 U.S. at 323). Count I's sufficiency will be determined on the controlling case law concerning physical takings claims.

Plaintiff maintains that the absence of an "imminent threat" to the community at the time of the canopy demolition sets the foundation for a categorical taking.[1] Dkt. 31 at 4 (citing Dkt.

---

[1] In is order dismissing the initial complaint, this Court noted: "Plaintiff does not plead that the County's actions amounted to a categorical taking, as nowhere in his complaint does he allege that the County took the canopy

23 ¶ 84).  Citing *Tahoe-Sierra*, Plaintiff contends his fallen canopy posed no harm on

September 14.  Yet, the photographs are a part of this record.  Dkt. 18-1; Dkt. 22 at 3 n.1 &

Appendix 1.  It is difficult to imagine that a reasonable person would not find the large, toppled

canopy in the photographs an imminent threat of harm to passersby, especially in the middle of

Florida hurricane season.  Indeed, Plaintiff alleges the vacant gas station and convenience store

are located at a busy intersection.  Dkt. 23 ¶ 10.  The rusting and bent, large canopy sat askew

and directly over the fuel pumps.  None of the factual allegations support the conclusory

allegation that "no reasonable person" could find the canopy in its state on September 14 was a

nuisance.[2]

Plaintiff's citation to *Crosson* is unpersuasive.  Dkt. 31 at 5 (citing *Crosson v. Carrollton

City Sch. Dist.*, 478 F. Supp. 3d 1255 (N.D. Ga. 2020)).  The court in *Crosson* denied a motion

to dismiss the Fifth Amendment Takings Clause claim because the plaintiff pled permanent

noise, light, and visual nuisances caused by a public high school's removal of a tree barrier.

*Crosson* simply stands for the proposition that in non-regulatory, physical takings cases, the

plaintiff need not allege complete deprivation of use.  478 F. Supp. 3d at 1269 ("Because [the

plaintiff] relies on the physical invasion prong of the Supreme Court's takings jurisprudence

rather than the regulatory taking prong, she need not allege complete deprivation of use.").

---

for public use."  Although the amended complaint adds the words "for public use" (Dkt. 23 ¶¶ 81, 131), this
phrase does not magically transform Counts I and V into plausible claims.
[2] The Court need not address whether the exercises of "police power" may ever give rise to a takings claim.
Dkt. 31 at 5–6 (citing *Baker v. City of McKinney*, No. 21-cv-176, 2021 WL 5390550, at *7 (E.D. Tex. Nov. 18,
2021).  Plaintiff has failed to allege a *per se* physical taking.

*Crosson* does not involve the use of an immediate abatement to remove an imminent threat of harm to people, as does the instant case.

In *Cedar Point Nursery v. Hassid*, cited by the County, the Court treated an access regulation as a *per se* physical taking. 141 S. Ct. 2063 (2021). The Court noted that such treatment did not run afoul of precedents and that "many government-authorized physical invasions will not amount to takings because they are consistent with longstanding background restrictions on property rights." *Id.* at 2078–79. "[T]he government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place." *Id.* at 2079. This principle applies to the instant case, which does not involve an agricultural access regulation given to labor organizations to enter property to solicit support for unionization as did the regulation in *Cedar Point*.

The County also cites *City of Fort Lauderdale v. Scott*, 888 F. Supp. 2d 1279, 1298 (S.D. Fla. 2012), for the proposition that an emergency action taken to abate a nuisance does not constitute a taking. There, the city demolished structures resulting from uncorrected code violations, rather than an action to take the property for public use. As in *Scott*, the allegations of the amended complaint here show that the County was not taking Plaintiff's property for public use. Contrary to Plaintiff's assertions, the amended complaint does not state a federal takings claim.

With respect to the state law inverse condemnation claim in count V, Plaintiff cites Florida cases supporting that the exercise of police powers to invade property, including

destruction of property, can give rise to a claim.  Dkt. 31 at 7.  Without deciding this issue on a motion to dismiss, and for the reasons stated above, Plaintiff may replead this count upon amendment of the federal takings claim.  If the federal takings claim is dismissed with prejudice after amendment, then this Court can decide whether to exercise its supplemental jurisdiction over this state law claim.

### Count II (per se Due Process violation against County)

Plaintiff argues the amended complaint sufficiently alleges a "persistent and widespread" practice of declaring emergency abatements sufficient to support a § 1983 *per se* due process claim.  The singular allegation that refers to a practice is that the County conducted 81 "emergency abatement actions" against properties (Dkt. 23 ¶ 37) in fiscal year 2019.  Nothing in the amended complaint addresses a practice in fiscal year 2017, which is the year Plaintiff's canopy was demolished.  Assuming as true that the County conducted 81 emergency abatements in fiscal year 2019, this fact is irrelevant for showing a pattern or practice in 2017. Alleging a "single error" in 2017 is not enough. Dkt. 22 at 11–12 (citing *Oden, LLC v. City of Rome*, 707 F. App'x 584, 588 (11th Cir. 2017) and *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329 (11th Cir. 2015)).  Without more, Count II fails to state a persistent and wide-spread practice of declaring emergency abatements required for a § 1983 action against the County.  *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).[3]

---

[3] *See also Moody v. City of Delray Beach*, 609 F. App'x 966, 967 (11th Cir. 2015).  Plaintiff cites *Philly Auto, Inc. v. City of Philadelphia*, 362 F. Supp. 3d 272, 281 (E.D. Penn. 2019) as a case in which a factual issue was created as to whether the city had a policy or custom of demolishing buildings without notice.  Unlike the case at hand, *Philly Auto* sufficiently presented a possible continuation of a policy, custom, or practice of demolishing property without notice to proceed to the jury.  *Id.*

Apart from any practice, Plaintiff alleges that section 8-180 (empowering immediate abatement without notice) constitutes a policy or custom of the County.  Dkt. 23 ¶ 36.  An ordinance is considered a policy for purposes of § 1983.  *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 690 (1978).  The amended complaint (unlike the original complaint) alleges that Ordinance 12-7 (the source of section 8-180) is *per se* unconstitutional in that the summary abatement procedures of Ordinance 12-7 "are incapable of affording due process." Dkt. 31 at 9 (citing Dkt. 23 ¶ 94).  Plaintiff relies on *Kinnison v. City of San Antonio*, 480 F. App'x at 271, 276 (5th Cir. 2012) in support of the contention that the ordinance itself is facially unconstitutional.

Plaintiff challenges three areas of the ordinance: the lack of a clear definition of "imminent health risk;" the lack of a requirement that multiple designated officials make the decision; and the lack of a requirement for an express finding that no other abatement procedure is reasonably available.  Dkt. 31 at 9.  In addition to these, Plaintiff takes issue with Ordinance 12-7's inclusion of "any public nuisance" as a potential "imminent health threat."

In *Kinnison*, the court noted the city code adequately defined "dangerous buildings" in connection with the term "imminent danger" and determined that the city ordinance was presumptively constitutional.  480 F. App'x at 276 n.9, 277.  The ordinance here provides that the "imminent health threat" includes a public nuisance "as defined herein, which under the circumstances presented and in the reasonable judgment of the Code Enforcement Department Director, represents an imminent risk of causing injury . . . to humans."  Dkt. 23 ¶ 30 (citing Code, Sec. 8-172).  This definition is similar to the ordinance in *Kinnison* where the "dangerous

building" was defined as one that posed "a clear and imminent danger . . . unless  . . .demolished."  Plaintiff cites no other applicable authority.[4]

The County's failure to give prior notice and hearing is the predominant alleged insufficiency; yet under emergency conditions, pre-deprivation notice and hearing is not required to abate a nuisance that represents an imminent risk of causing injury to people.  *See Fuentes v. Shevin*, 407 U.S. 67, 80, 90 (1972) (providing that pre-deprivation notice and hearing is not required in "extraordinary situations"—hearing may be post-deprivation); *Jimenez v. City of Daytona Beach*, No. 6:15-cv-1494-Orl-31KRS, 2016 WL 11626974, at *2 (M.D. Fla. Feb. 1, 2016) (citing *Fuentes*).  Plaintiff cites *Tackett v. Village of Carey, Ohio*, No. 3:06cv7024, 2007 WL 1500892 (N.D. Ohio May 18, 2007), to establish that Ordinance 12-7 fails to provide pre-deprivation due process.  In *Tackett*, however, "a large gap in time" occurred between the city's resolution and clean-up.  *Id*. at *4.  The defendants in *Tackett* admitted "the denial of pre-deprivation process was not based on an emergency situation or impracticality."  *Id*.  The County has made no such concession in this case, nor has Plaintiff alleged anything other than an emergency: a hurricane hits and, within 3 days, the toppled steel canopy at a vacant gas station on a busy street is demolished for removal.  The County declared the abatement necessary on September 14 and demolished the canopy the same day.  With respect to whether

---

[4] Plaintiff also argues that the authority of a single individual, either the Code Enforcement Department Director or a designee, must not be granted final decision-making authority, and, in any event, no formal designation process or supervision of the designee is provided.  Dkt. 23 ¶ 94 a., b.  The ordinance allegedly should require specific findings as to the nature of the imminent health treat prior to initiating immediate abatement.  *Id*. ¶ 94 c. Plaintiff cites no authority in support of the adequacy of these allegations.

the ordinance *per se* violates the federal constitution, Plaintiff will be given one more opportunity to amend.

### Count III (as applied Due Process violation against County)

Plaintiff divides the procedural due process claim against the County in the original complaint (Count II at Dkt. 1 ¶¶ 58–69) into two separate counts—a *per se* claim (Count II at Dkt. 23 ¶¶ 89–101) and an "as applied" claim (Count III at Dkt. 23 ¶¶ 102–113). The County argues that the "as applied" claim was not raised in the original complaint and is now time-barred under the four-year limitation for § 1983 due process claims. *See Townsend v. Dep't of Revenue*, No. 8: 16-cv-1-MSS-AEP, 2016 WL 8914544, at *3 (M.D. Fla. Mar. 16, 2016) (dismissing § 1983 claim as facially time-barred under Florida four-year statute of limitations). In support, the County argues that, for the first time, Plaintiff alleges the post-deprivation hearing denied him meaningful review of the determination that the canopy constituted a nuisance prior to its demolition by the County. Dkt. 26 at 7.

The initial complaint, however, alleges that the County "did not follow the procedures for abatement" of either a public nuisance or an imminent health threat under the Code. Dkt. 1 at 12. These allegations could be read to contemplate an "as applied" procedural due process challenge to the ordinance with respect to meaningful post-deprivation review. Consequently, Count III will not be dismissed on the statute of limitations.

### Count VI (Negligence against County)

This state law count will not be stricken at this time. The County may make any substantive arguments to this count should Plaintiff maintain this claim upon amendment.

14

**_Count IV (Due Process violation against Officer Pisano—qualified immunity)_**

Plaintiff argues that qualified immunity will not save Officer Pisano because the allegations show that he violated clearly established law by initiating an abatement proceeding without notice in a non-emergency situation.  Dkt. 31 at 17–18.  Count IV alleges that "[n]o reasonable person would judge the tipped canopy represented an imminent risk of causing injury or disease to humans."  Dkt. 23 ¶ 119.[5]  Plaintiff further alleges in this same vein:

> Officer Pisano's actions violated Plaintiff's clearly established rights under the Due Process Clause because the right to pre-deprivation notice and an opportunity to be heard is so clear from established case law that Officer Pisano knew or should have known that his decision to initiate the Immediate Abatement would violate Plaintiff's constitutional rights _because no reasonable person would judge that the tipped canopy represented an imminent risk of causing injury or disease to humans_.

Dkt. 23 ¶ 124 (emphasis added).  In other words, it is clearly established law, according to Plaintiff, that this particular canopy on the particular day in question did not constitute a public nuisance or imminent risk to human safety worthy of emergency abatement.  He bolsters his claim of no emergency with the allegation that supervisor Cansler had determined that the canopy did not constitute a public nuisance or imminent health threat.  Dkt. 23 ¶¶ 50, 124.

With respect to whether Plaintiff was entitled to pre-deprivation notice and hearing based on the absence of any emergency, both parties cite _Grayden v. Rhodes_, 345 F.3d 1225 (11th Cir. 2003) and _AHE Realty v. Miami-Dade County_, 320 F. Supp. 3d 1322 (S.D. Fla. 2018).  Dkt. 27

---

[5] Count IV incorporates by reference paragraph 38: "No reasonable person would judge that the still-attached canopy with only one corner touching the ground and located entirely on Plaintiff's private property represented an imminent risk of causing injury or disease to humans."  Dkt. 23 ¶ 114.

at 6; Dkt. 31 at 15–16.  Plaintiff claims that *Grayden* itself creates the clearly established right in existence in 2017.

The code enforcement officer in *Grayden* was granted qualified immunity as to the plaintiff's post-deprivation due process claims.[6]  There, the officer determined a residential building should be condemned and gave notice of eviction but not notice of the tenants' right to challenge the condemnation decision.  345 F.3d at 1245–46.  The remedial procedure available to the tenants was published in the City Code.  *Id*. at 1245.  The Eleventh Circuit determined, however, that it was not clearly established at the time of the eviction in 2000 that tenants had the right to contemporaneous notice of their right to appeal the condemnation decision.  *Id*. at 1248–49.

The facts of *Grayden*, however, do not provide clearly established law binding on Officer Pisano.  To do so, a concrete factual context must "make it obvious to a reasonable government actor that his actions violate federal law."  *See Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (describing a clearly established right).  The exigent circumstances in *Grayden* required contemporaneous notice of the right to contest condemnation at the same time as notice to vacate the condemned premises.  345 F.3d at 1237–38, 1244.  Abating an imminent risk to human safety created by a canopy toppled by a hurricane does not entail evicting a tenant from a condemned property.  The local code provisions differ as well.  *Grayden* is therefore not clearly established law applicable to Officer Pisano in the circumstances of this case.  Pisano was operating in an emergency and the law was not clearly established.

---

[6] The *Grayden* court specifically found that the tenants were not entitled to a pre-deprivation hearing.  345 F.3d at 1244.

In *AHE*, a building official (who posted the "unsafe" notice requiring eviction) was granted qualified immunity on a motion to dismiss.  There, the district court discusses *Grayden* at length, noting the Eleventh Circuit's emphasis of *Grayden*'s narrow holding and distinguishing the facts of *Grayden*.  Neither of those cases provide a clearly established right of a property owner such as Plaintiff to pre-deprivation notice and hearing in the context of Ordinance 12-7 and an already fallen steel structure posing a risk of imminent harm to humans.

Plaintiff argues, alternatively, that Officer Pisano is not entitled to qualified immunity because he was acting outside the scope of his authority.  Dkt. 31 at 15–16.  Based on the allegations, Officer Pisano was performing a legitimate job-related function through means he was empowered to use.  Dkt. 22 at 16.  As stated in the prior order, the Code bestows upon a code enforcement officer the ability to abate an imminent health threat, and carrying out an immediate abatement falls under his discretionary authority.  *Id*. citing *Holloman ex re. Holloman v. Harland*, 370 F.3d 1265, 1267 (11th Cir. 2004).  Per the allegations of the amended complaint, there is no basis to consider that Officer Pisano was acting outside the scope of his authority.  Officer Pisano is entitled to qualified immunity based on these allegations.

Based on the foregoing reasons, Officer Pisano's motion to dismiss with prejudice (Dkt. 27) is granted.  Count IV is dismissed with prejudice.  The County's motion to dismiss (Dkt. 27) is granted with leave given to amend.  The County's motion to strike Count VI (Dkt. 27) is denied.  Plaintiff shall file an amended complaint consistent with this order within fourteen (14) days.

**DONE AND ORDERED** at Tampa, Florida, on March 7, 2022.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of record

18