# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CLYDE W. MUNZEL, as Trustee of the
CLYDE W. MUNZEL REVOCABLE
TRUST, under agreement dated May 3, 2005,

      Plaintiff,

v.                                    Case No. 8:21-cv-2185-WFJ-AAS

HILLSBOROUGH COUNTY, FLORIDA,

      Defendant.

_____/

## ORDER

Before the Court is Defendant Hillsborough County's motion to dismiss the second amended complaint (Dkt. 38), and Plaintiff's memorandum in opposition (Dkt. 39). After careful consideration of the allegations of the second amended complaint (Dkt. 35), the submissions of the parties, and the applicable law, the Court concludes the motion is due to be denied.

## ALLEGATIONS

The factual, not conclusory, allegations of a complaint are accepted as true and are construed in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The first 75 paragraphs of the second amended complaint are almost verbatim to the first 76 paragraphs of the prior amended complaint found at docket 23. Dkt. 25 at 1–16. Rather than repeat

the same facts, this Court refers to its prior order and adopts the recitation of these facts as part of this Order.  *See* Dkt. 32 at 1–6.  The Court does not rely on the photographs found on page 3 of the prior order in its ruling on the sufficiency of the second amended complaint.  *Id*. at 3.[1]

The second amended complaint expands the common allegations section (part "D") by 14 paragraphs.  Dkt. 35 ¶¶ 76–89.  Plaintiff alleges that the Ruskin property is commercially zoned with limited foot traffic, the tipped canopy was entirely on private property, and the public would have "no legal reason" to enter the property because the gas station and convenience store had been closed prior to September 2017 when Hurricane Irma hit.  *Id*. ¶¶ 78–81.  Plaintiff alleges that Area Code Supervisor David Cansler (who had the "immediate supervisory responsibility" over southern Hillsborough County) initially determined the tipped canopy did not present an imminent health threat.  *Id*. ¶¶ 47, 77.

Plaintiff asserts that a "persistent and widespread practice" of taking immediate abatement actions without prior notice to the private property owners

---

[1]  On a motion to dismiss, the Court may consider only those documents central to the plaintiff's claims and "of undisputed authenticity."  *Hi-Tech Pharms., Inc. v. HBS Int'l Corp*., 910 F.3d 1186, 1189 (11th Cir. 2018).  With respect to the photographs on page 3 of the prior order (Dkt. 32 at 3), Plaintiff now questions the authenticity of all the photographs filed to date on the docket.  Dkt. 39 at 5 n.1.  Plaintiff posits that the photographs may have been taken after Supervisor David Cansler first looked at the canopy to determine whether it posed an imminent health threat.  *Id*.  Plaintiff argues that the photographs may have been taken to buttress the County's ultimate determination—that emergency abatement of the public nuisance was necessary—and to negate Supervisor Cansler's first assessment to the contrary.  The photographs will not be considered, nor will the motion be converted to one for summary judgment.

existed in 2017.  *Id*. ¶ 76.  The persistent practice was allegedly evidenced by

"multiple emergency abatement actions against properties that the County asserts

had conditions constituting imminent health threats."  *Id*.  The second amended

complaint contains no additional facts revealing any individual examples or

instances that would form the basis of a widespread and persistent practice.[2]

Plaintiff asserts that Hillsborough County Ordinance 12-7, codified in the

County's code at section 8-180, lacks adequate procedural protections as to

property owners' due process rights by failing to provide for contemporaneous

notice to property owners of a right to challenge immediate abatement.  *Id*. ¶¶ 85,

88.  Plaintiff alleges the County never advised Plaintiff of his right to lodge a prior

challenge to the abatement action of September 14, but instead gave written notice

of hearing after the demolition on the issue of whether the remaining debris created

by the County constituted a public nuisance.  *Id*. ¶¶ 86–87.  Finally, Plaintiff

alleges that even assuming the County engaged in a valid exercise of police powers

and had afforded Plaintiff due process protections, the County committed a taking

under federal and Florida law "by damaging the convenience store and gas pumps

that clearly posed no nuisance to the public at all."  *Id*. ¶ 89.

---

[2] To the extent Plaintiff alleges the precise number of emergency abatements conducted by the County in 2019, this information is irrelevant to what transpired in 2017.  *See* Dkt. 35 ¶¶ 36, 130 (referring to 2019 numbers).

3

The second amended complaint alleges the same three claims under federal law: (1) a taking violative of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments (Count I); (2) a *per se* violation of procedural due process (Count II); and (3) an "as applied" violation of procedural due process.  The state law counts also remain the same—inverse condemnation (Count IV) and negligence (Count V).

## DISCUSSION

### *Counts I and IV: Takings claims under United States or Florida Constitution*

To state a claim under the Fifth Amendment's Takings Clause, the plaintiff must plausibly allege the government took private property "for public use."  U.S. Const. amend. V; *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321 (2002).  The distinction lies in the exercise of the power of eminent domain, which is a physical or *per se* taking of private property for public use, versus passing a regulation pursuant to the police power, which may or may not have "the effect of depriving a landowner of all economically beneficial use" of the land.  *Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 805 (11th Cir. 2009); *see Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005) (defining physical taking); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992) (defining regulatory taking).

4

When the government acts pursuant to its police power in an emergency situation to destroy property so as to avert a dangerous situation putting the health and safety of the community at risk, there is no taking for "public use." *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 490–92 n.22 (1987) (expressing importance of the nature of a state's action in a takings analysis and noting the justification of exercising police power to protect health, morals, or safety of public to prevent impending danger). As stated in *Keystone*, "all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community, and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it." *Id.* at 491–92 (internal quotation marks omitted); *see also Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1215–16 (N.D. Fla. 2020) (collecting cases where the valid exercise of state's police power in passing ordinances or laws does not give rise to a takings claim). Indeed, no taking occurs where the property owner never had a right to use the property in the manner constituting a nuisance or imminent threat or danger to the community. *See Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021) (noting that limitations on takings claims encompass privileges to enter property to avert an imminent public disaster or serious harm or risk posed to the public); *City of Fort Lauderdale v. Scott*, 888 F. Supp. 2d 1279, 1298 (S.D. Fla. 2012) (finding city's demolition of

5

structures resulting from code violations was not an effort to take the properties for public use).

In construing the allegations, the Court recognizes that the Takings Clause of the Florida Constitution is identical to the United States Constitution. *See Persaud Props. FL Invs., LLC v. Town of Fort Myers Beach*, No. 2:21-cv-384-JLB-NPM, 2022 WL 888919, at *4 (M.D. Fla. Mar. 25, 2022) (noting the Takings Clause of the both constitutions can be analyzed together, citing *Highlands-In-The-Woods, L.L.C. v. Polk Cnty.*, 217 So. 3d 1175, 1180 (Fla. 2d DCA 2017)).[3] Plaintiff alleges the demolition was "for a public use." Dkt. 35 ¶ 94. Plaintiff claims that the canopy and any other structures damaged "were not a public nuisance or an imminent health threat." *Id*. ¶ 96 Although admitting that the County determined the canopy on the property constituted a public nuisance and also an imminent public health threat requiring immediate abatement, Plaintiff

---

[3] A takings plaintiff does not need to exhaust state remedies before proceeding in federal court. *Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2167 (2019); *Pakdel v. City and Cnty. of San Francisco, Cal.*, 141 S. Ct. 2226, 2230 (2021) ("[O]ne of the reasons *Knick* gave for rejecting *Williamson County's* state-compensation requirement is that this rule had effectively established an exhaustion requirement for § 1983 takings claims."). The § 1983 claim must nevertheless be ripe. *Pakdel*, 141 S. Ct. at 2231 ("[A] plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision."). "For the limited purpose of ripeness, however, ordinary finality is sufficient." *Id*.

takes issue with the County's process in arriving at its determination.[4] *Id*. ¶¶ 32, 38–40.  Assuming these allegations as true, the fallen canopy did not under any circumstances constitute an imminent public health threat.  Plaintiff argues, therefore, that the County's determination was not a valid exercise of its police power but a taking "for public use" under the County's eminent domain power. *See Cedar Point*, 141 S. Ct. at 2079.  In essence, Plaintiff asserts the application of the regulation went "too far" and constitutes a *per se* physical taking by the County.[5]

Plaintiff must prove, however, that he lost "*all* economically beneficial or productive use" of his property.  *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942–43 (2017) (emphasis added); *Lucas*, 505 U.S. at 1015, 1030.[6]  This "categorical rule"

---

[4] Plaintiff alleges that "no reasonable person" could determine the canopy was a public nuisance. Plaintiff, however, cannot selectively choose who is a "reasonable person."  According to Plaintiff, Code Enforcement Area Supervisor Candler is a reasonable person but not Code Enforcement Officer Carmine Pisano, Code Enforcement Area Supervisor James Karr, or anyone else.  *See* Dkt. 35 ¶¶ 37, 72.

[5] *Cedar Point*, unlike the instant case, involved an access regulation, which the Supreme Court held gave rise to a *per se* physical taking.  141 S. Ct. at 2080.  Although *Cedar Point* recognized that regulations may go "too far," the focus in determining whether a regulation has resulted in a physical taking is not "whether the government action at issue comes garbed as a regulation (or statute, or ordinance, or miscellaneous decree . . [but] whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property."  *Id*. at 2072.  *Cedar Point* distinguished the access regulation from a mere trespass, a law enforcement search, health or safety inspections, and any application invoking traditional background principles of property law.  *Id*. at 2079–80.

[6] The term "categorical" refers to the denial of *all* economically beneficial use of land, also called "a categorical rule."  *Murr*, 137 S. Ct. at 1943 (citing *Lucas*, 505 U.S. at 1015, 1030).  To the extent this term may have been used imprecisely in prior orders in the instant case, those orders should be read with due deference to the law cited in this order.

enjoys limited application to extraordinary cases only.  *See Tahoe-Sierra Pres.*,
535 U.S. at 332, 334 (referring to "extreme categorical rule" as "any deprivation of
all economic use . . . constitutes a compensable taking" and declining to apply it to
regulation that has effected a temporary taking); *Alsop v. DeSantis*, No. 8:20-cv-
1052-T-23SPF, 2020 WL 9071427, at *3 (M.D. Fla. Nov. 5, 2020) (quoting same).
Here, Plaintiff alleges that the gas station and convenience store were not yet open
for business when the hurricane hit.  *Id*. ¶ 25.  Plaintiff has a heavy burden of
demonstrating this case is an extraordinary one.  In arguably close calls, however,
the Court prefers a resolution of the case on its merits. [7]  Accordingly, Counts I and
IV survive dismissal at this stage of the proceedings.

### *Count II: Section 1983 per se violation of procedural due process*

Count II seeks to facially challenge the County ordinance.  Count II lists
various infirmities of the ordinance, all allegedly violative of constitutional
procedural due process.  Dkt. 35 ¶¶ 109–12.  The only flaw briefed by the parties is
failure to provide adequate notice of a pre- or post-deprivation hearing to challenge

---

[7] Plaintiff has cited no Supreme Court or Eleventh Circuit authority to support his argument that
the alleged collateral damage to the store and gas pumps may be challenged as an invalid
exercise of the police power.  This is not a case of the police destroying property in pursuit of a
fleeing felon as in the non-binding case cited by Plaintiff.  Dkt. 39 at 11 (citing *Baker v. City of
McKinney*, No. 4:21-cv-176, 2021 WL 5390550, at *8–9 (E.D. Tex. Nov. 18, 2021)).  This case
is also not akin to the citrus canker case where the destruction of healthy trees was deemed to
bestow a public benefit to the state's economy as opposed to preventing a public harm.  Dkt. 39
at 18–19 (citing *Dep't of Agric. & Consumer Servs. v. Mid-Florida Growers, Inc*., 521 So. 2d
101, 103 (Fla. 1988)).

the County's determination that the fallen canopy constituted an imminent health threat warranting immediate removal or demolition.

To state a claim for procedural due process violations under § 1983, Plaintiff must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F. 3d 1225, 1232 (11th Cir. 2003).[8]  The last two elements are in dispute.

State action requires compliance with *Monell*—a showing that an official policy, practice, or custom exists on the part of the local government.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *Oden, LLC v. City of Rome, Ga.*, 707 F. App'x 584, 587 (11th Cir. 2017).  Liability under *Monell* may be established in more than one way.  For example, not only may a widespread and persistent practice exist, but an ordinance itself may constitute the policy or custom.  *Monell.* A436 U.S. at 690; *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016).[9]  Count II asserts that the ordinance *per se* fails to afford minimum due process based on the lack of sufficient notice.  Dkt. 39 at 12–16; Dkt. 35 ¶¶ 28–24, 36, 38–39, 56, 65, 68, 76, 86–87, 109–112.  Plaintiff also alleges

---

[8] *See also Oden, LLC v. City of Rome, Ga.*, 707 F. App'x 584, 586 (11th Cir. 2017) (citing *Grayden*).

[9] Another method may involve a showing of an action initiated by a *de facto* final decisionmaker, regardless of whether the ordinance authorizes that individual to make the decision.  *Monell*, 436 U.S. at 690; *Hoefling*, 811 F.3d at 1279.  Plaintiff attempts to cover this method in Count III.

that the County was executing the provisions of the ordinance when it demolished the canopy.  Dkt. 35 ¶¶ 28–34.

The third factor—constitutionally inadequate process—requires that the government provide the aggrieved party notice and an opportunity to be heard "at a meaningful time and in a meaningful manner."  *Grayden*, 345 F.3d at 1232 (citing *Fuentes v. Shevin*, 407 U.S. 67, 80, 90 (1972)).  In emergency situations, however, a summary action dispensing with a pre-deprivation hearing may be justified. *Hodel v. Virginia Surface Min. & Reclamation Ass'n*, 452 U.S. 264, 299–300 (1981) ("Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action.").  A post-deprivation hearing may be sufficient.  *See Fuentes,* 407 U.S. at 80, 90; *Jimenez v. City of Daytona Beach.*, No. 6:15-cv-1494-Orl-31KRS, 2016 WL 11626974, at *2 (M.D. Fla. Feb. 1, 2016) (citing *Fuentes*).  Nevertheless, Plaintiff takes issue with the notice provisions of the ordinance in that it is "incapable of affording due process."  Dkt. 39 at 14 (citing *Kinnison v. City of San Antonio*, 480 F. App'x 271, 276 (5th Cir. 2012)); Dkt. 35 ¶ 108 ("While a county may enact valid procedures for taking summary action to deprive persons of their property interests without any pre-deprivation process to protect the public health and safety, the County's Ordinance provides inadequate protections against violations of the Due Process Clause . . .").

10

Plaintiff alleges that the ordinance not only fails to provide contemporaneous notice of demolition but does not provide for adequate notice at all.  To that end, Plaintiff alleges the ordinance lacks "affirmative, contemporaneous notice" of a property owner's right to challenge the immediate abatement decision.  Dkt. 35 ¶¶ 85, 88, 110 (citing *Grayden*).  Plaintiff further alleges the ordinance fails "to afford any procedure for a property owner to request a post-deprivation hearing to challenge the immediate abatement decision at all, unless and until the County serves the notice required by Code Section 8-180(b) within seven days after the abatement action."  *Id*. ¶ 111.

Reviewing the operative complaint in its entirety, Plaintiff acknowledges that the ordinance states that a public nuisance determined by the Code Enforcement Department Director to be "an imminent health threat" may "immediately, and without prior notice" be terminated and abated.  *Id*. ¶ 32 (citing Code Sec. 8-180(a)).  The issue argued by the parties is whether the ordinance's notice provision satisfies the "contemporaneous" notice espoused in *Grayden*. Plaintiff argues that the ordinance deprives the property owner of the procedural due process right to challenge the County's decision to abate immediately, but at a future reasonable time.

Plaintiff admits that the ordinance does, in fact, provide an opportunity for the property owner to request a post-deprivation hearing.  *Id*. ¶¶ 33, 109, 111.

11

Plaintiff specifically alleges that Supervisor Cansler hand-delivered a notice five days after the canopy was demolished, which noticed for hearing an emergency abatement before a Special Magistrate. *Id*. ¶ 63. Plaintiff claims, however, that this notice he was given within seven days of the emergency abatement did not comply with the ordinance's requirement to inform the property owner of their right *to request* a hearing in writing to challenge the Code Enforcement Department's determination that an imminent health threat existed on the property. *Id*. ¶¶ 33, 65, 68, 70, 84, 87. At the hearing, which Plaintiff attended, the issue alleged to have been addressed was whether the debris left after the emergency abatement constituted a public nuisance—not whether an imminent health threat existed at the time of the emergency demolition. *Id*.

Plaintiff alleges that the notice advised of an upcoming hearing but not a hearing on the initial determination. Plaintiff's challenge appears to be directed to what transpired, or did not transpire, at the hearing he received six days after the demolition. To be clear, Plaintiff alleges that the County never served a viable notice of hearing, because the hearing held was not directed to the demolished property but to the debris left by the County's demolition team. Dkt. 35 ¶¶ 65, 68, 86–87. He claims he was not able to challenge the initial emergency abatement based on the conduct of the post-deprivation hearing. This contention involves the

constitutional adequacy of the post-deprivation hearing, which was not before the *Grayden* court. 345 F.3d at 1238.

Even assuming the County followed the ordinance procedures perfectly, Plaintiff argues that the ordinance itself fails to provide for the required contemporaneous notice of a future hearing on the emergency abatement. As such, Plaintiff contends the ordinance fails to afford sufficient notice to satisfy procedural due process. As set forth above, Plaintiff alleges that the ordinance provides up to seven days after abatement to serve the property owner with notice advising him or her of the right to request a hearing to challenge the Code Enforcement Department's determination. Dkt. 35 ¶¶ 110–12. Plaintiff contends the seven-day period does not meet the contemporaneous requirement of *Grayden*.

*Grayden*, unlike the instant case, involved an emergency eviction to protect the health and safety of the tenants. That case was decided on the sole issue of qualified immunity. The ordinance in *Grayden* did not state a specific time period, but simply permitted the tenant to request a hearing on any notice issued in connection with code enforcement. 345 F.3d at 1228. *Grayden* held that in the context of an emergency eviction, "contemporaneous pre-deprivation notice is required but a pre-deprivation hearing is not." *Id*. at 1237. The *Grayden* court specifically defined "contemporaneous notice" based on the facts before it—a code enforcement officer condemned an apartment complex and gave notice of an

eviction without providing the tenants with contemporaneous notice of their right to appeal the condemnation decision. "By 'contemporaneous' notice, we mean that [the tenants] were entitled to notice of their right to challenge the condemnation at the same time they were provided with the notice to vacate the premises." *Id*. at 1244. *Grayden* concluded that the ordinance was "not reasonably calculated" to inform the tenants, who were faced with less than 36 hours to vacate their homes, of their right "to choose between acquiescing in or contesting" the condemnation order. *Id*. at 1243. Accordingly, the *Grayden* court found that the notice provided by the city ordinance was insufficient to satisfy procedural due process.

*Grayden* involved an eviction of tenants stemming from the condemnation of an apartment complex as a dangerous structure. In an emergency eviction, a tenant "may acquiesce in the condemnation decision and secure alternate long-term housing" which would leave the tenant with no recourse if the building proved to be habitable. *Id*. at 1237. Here, Plaintiff was not required to vacate a residence and choose between securing a new lease elsewhere or obtaining a temporary change in residence and contest the condemnation notice. The facts as alleged show that Plaintiff received the notice of a hearing within seven days of the demolition, which is the time allotted by the ordinance. The questions remain, however, whether seven days or less constitutes "contemporaneous" notice and

whether the ordinance unconstitutionally fails to afford procedural due process to a property owner under the circumstances of this case.[10]  Thus, Count II, although thinly pled, will be permitted to proceed to a determination on the merits.

## *Count III: Section 1983 as applied violation of procedural due process*

In this "as applied" procedural due process claim, Plaintiff argues that he adequately alleges *Monell* liability in three ways: (1) the County was executing the provisions of the ordinance (the policy); (2) the County engaged in a widespread and persistent practice of declaring and conducting emergency abatements (purportedly without imminent health threats); and (3) regardless of the ordinance, Code Enforcement Officer Pisano, or some other unnamed officer, initiated an action as a *de facto* final decisionmaker as evidenced by Officer Pisano's email approving the immediate abatement.  Dkt. 35 ¶¶ 39, 44–45, 56, 128; *see Oden*, 707

---

[10] The Court is not convinced that *Knick v. Twp. of Scott, Pa*., 139 S. Ct. 2162, 2167 (2019), and *Pakdel v. City and Cnty. of San Francisco, Cal.*, 141 S. Ct. 2226, 2230 (2021), operate to permit the procedural due process claim under § 1983.  The Eleventh Circuit recently affirmed a Florida district court's dismissal of a procedural due process claim, citing to both *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (*en banc*) and *Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir. 2000).  *Kessler v. City of Key West*, No. 21-11069, 2022 WL 590892, at *3 (11th Cir. Feb. 28, 2022). In the *Kessler* opinion, the Eleventh Circuit applied *Knick* to only the takings claim and remanded for the district court to consider whether other grounds existed for the dismissal of that claim.  *Id*. at *5.  *Kessler* did not extend *Knick* or *Pakdel* to procedural due process claims brought under § 1983.  *McKinney* and *Horton* hold that a plaintiff cannot claim that a state deprived him of procedural due process where he did not avail himself of an otherwise adequate process provided by the state to remedy the procedural deprivation.  *Id*. at *3 (citing *McKinney*, 20 F.3d at 1550, 1557, 1563, and *Horton*, 202 F.3d at 1300); *see also Dibbs v. Hillsborough Cnty., Fla.*, 67 F. Supp. 3d 1340, 1354 (M.D. Fla. 2014). Florida provides for certiorari review of Code Enforcement decisions, *see Hayes v. Monroe Cnty., Fla.*, 337 So. 3d 442 (Fla. 3d DCA 2022), and it is uncontested that Plaintiff did not seek such review.

F. App'x at 586–87 ("A municipality may be liable for an official policy enacted by its legislative body, or where its policymakers have acquiesced in a longstanding operating procedure, or where an entity with 'final policymaking authority' ratifies the unconstitutional decision of a subordinate.") (citation omitted).  The allegations with respect to the County's carrying out the provisions of the ordinance are addressed under Count II above.

With respect to showing a widespread and persistent practice by the County that establishes a policy or custom apart from the ordinance, Hillsborough County is alleged in 2017 to have "conducted multiple emergency abatement actions against properties that the County asserts had conditions constituting imminent health threats."  Dkt. 35 ¶ 76.  Plaintiff attempts to buttress this allegation with the 81 emergency abatements in 2019.  *Id*. ¶¶ 36, 130.[11]  Plaintiff further relies on the allegation that the County has a "Rapid Response Team" for the very purpose of executing abatements without prior notice based on a finding of an imminent health threat.  Dkt. 39 at 13 (citing Dkt. 35 ¶¶ 38–39, 56, 76).

Plaintiff argues these allegations are sufficient under *Hoefling*.  There, Mr. Hoefling lived on a sailboat, which the city's marine patrol officers confiscated and destroyed while he was away for a short trip.  *Hoefling*, 811 F.3d at 1274–75.  He

---

[11] It remains unclear why statistics from 2019 would bolster a claim involving an emergency abatement occurring in 2017 after a hurricane.

alleged that he received a call from a friend that the police were taking boats, that "local mariners" told him that others fell victim to similar conduct resulting from the city's failure to follow the appropriate procedures, and that the city referred to their systematic destruction of ugly boats as a "cleanup" program.  Dkt. 39 at 13 (citing *Hoefling*, 811 F.3d at 1279–80).  The Eleventh Circuit found these allegations sufficient to state a facially plausible municipal liability claim.

To show the County exceeded its policing authority, Plaintiff will have to show that the demolition of the canopy was more than an isolated incident or random act.  *See McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).  Plaintiff must prove that there was a pervasive or widespread violation of procedural due process in the aftermath of Hurricane Irma or that the County has a history of canceling due process rights during public emergencies.  *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329 (11th Cir. 2015) ("single incident" insufficient); *Oden,* 707 F. App'x at 588 ("single incident" insufficient).  Accordingly, Count III will proceed in the interests of a resolution of this case on the merits.[12]

It is therefore **ORDERED AND ADJDUGED** that Defendant Hillsborough County's motion to dismiss the second amended complaint (Dkt. 38) is denied.  Defendant must file its answer and defenses with fourteen (14) days.

---

[12] Count V, a state law claim for negligence, will not be dismissed at this juncture.

17

**DONE AND ORDERED** at Tampa, Florida, on July 5, 2022.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE